# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Paula Russell, Claimant, Petitioner,

v.

Wal-Mart Stores, Inc., Employer, and American Home Assurance, Carrier, Respondents.

Appellate Case No. 2023-000403

———————

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

———————

Appeal From the South Carolina Workers' Compensation Commission

———————

Opinion No. 28258
Heard October 1, 2024 – Filed January 29, 2025

———————

## REVERSED AND REMANDED WITH INSTRUCTIONS

———————

C. Daniel Vega and James David George, Jr., both of Smith, Born, Leventis, Taylor & Vega, LLC, of Columbia, for Petitioner.

Johnnie W. Baxley, III, of Willson Jones Carter & Baxley, P.A., of North Charleston, for Respondents.

———————

**JUSTICE HILL:** The issue in this workers' compensation case is whether the claimant, Paula Russell, proved her physical condition has changed since her initial

workers' compensation award. The Appellate Panel of the Workers' Compensation Commission found she did not and denied her request for surgery and other additional benefits. We now reverse and remand this case to the Workers' Compensation Commission with instructions to award Russell benefits.

## I.

Russell injured her back in 2009 while working as an assistant manager at Wal-Mart. She reached maximum medical improvement in 2011. Dr. James Merritt IV, an orthopedic surgeon, assigned a seven percent disability rating to Russell's lumbar spine. Russell sought workers' compensation benefits, and in June 2011, a single commissioner ruled she was entitled to benefits based on the seven percent permanent partial disability to her back.

Russell returned to work, but her pain and symptoms soon worsened. In December 2011, she brought this claim for additional medical treatment and other benefits based on her change of condition. In 2013, another single commissioner found Russell's condition had changed and awarded her continued medical treatment and temporary total disability benefits. The Appellate Panel reversed, concluding Russell had failed to prove her condition had worsened. From this point, a slow-motion procedural rodeo bounced Russell's claim to the court of appeals; back to a single commissioner; then again to the Appellate Panel; back to the court of appeals; and then to this Court, which in 2019 remanded to the Appellate Panel (with exasperation) for "immediate and final review" of the single commissioner's order "in accordance with the 2016 holding of the court of appeals." *Russell v. Wal-Mart Stores, Inc.*, 426 S.C. 281, 291, 826 S.E.2d 863, 868 (2019). The Appellate Panel then issued the order before us, again finding Russell failed to prove a change of condition. The court of appeals affirmed. *Russell v. Wal-Mart Stores, Inc.*, Op. No. 2022-UP-422 (S.C. Ct. App. filed Nov. 23, 2022). We granted certiorari and now hold the Appellate Panel's denial of Russell's change of condition claim is not supported by substantial evidence.

## II.

Whether a workers' compensation claimant is entitled to additional benefits based on a change of condition is governed by § 42-17-90(A) of the South Carolina Code (2015), which in relevant part states:

> On its own motion or on the application of a party in interest on the ground of a change in condition, the commission may review an award and on that review may

> make an award ending, diminishing, or increasing the compensation previously awarded, on proof by a preponderance of the evidence that there has been a change of condition caused by the original injury, after the last payment of compensation.

To prevail on her change of condition claim, Russell must prove by the greater weight of the evidence that her physical condition has changed since the initial award and the change was caused by her original 2009 injury. *Krell v. S.C. Hwy. Dep't.*, 237 S.C. 584, 588, 118 S.E.2d 322, 323 (1961).

In ruling that Russell did not prove a change of condition, the Appellate Panel first concluded Russell's testimony suggested her current complaints and need for surgery and other medical treatment existed at the time of the original award. The Panel went on to state that the "medical records, diagnostic tests, and medical opinions do not support a physical change of condition for the worse." In coming to this conclusion, the Panel appeared to give the greatest weight to her doctors' statements about Russell's MRI scans, while rejecting their overall expert opinions and diagnoses. Both Dr. Merritt and Dr. Williams S. Edwards (Russell's spine surgeon) testified there was no significant radiographical difference between the MRIs taken before Russell's initial award and the one taken after; however, they both testified Russell had experienced a change in condition. Despite these uncontradicted medical opinions, the Panel determined Russell's alleged worsening was based "solely" on her subjective complaints. The Panel acknowledged that the opinions and reports of both Dr. Merritt and Dr. Edwards could "be cherry-picked to support either position on this change of condition dispute" and that there was "some evidence the claimant may have suffered a change of condition," but it nonetheless found Russell simply did not prove a change of condition by the greater weight of the evidence as the statute requires.

The court of appeals upheld the ruling of the Appellate Panel, finding it was supported by substantial evidence. Like the court of appeals, our scope of review of the Appellate Panel's decision is the familiar one established by § 1-23-380 of the South Carolina Code (Supp. 2024), which forbids us from substituting our judgment for the judgment of the Panel "as to the weight of the evidence on questions of fact." As relevant here, we may only disturb the Appellate Panel's decision if "substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or . . . arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of

discretion."  § 1-23-380(5)(e), (f); *see generally Lark v. Bi-lo, Inc.*, 276 S.C. 130, 132–33, 276 S.E.2d 304, 305 (1981).

The Panel's decision that Russell did not prove a change of condition was clearly wrong in light of the substantial record evidence.  We are mindful "substantial evidence" means only enough evidence to allow a reasonable mind to reach the same decision.  *Pratt v. Morris Roofing, Inc.*, 357 S.C. 619, 622, 594 S.E.2d 272, 274 (2004).  We also are aware that a decision may be supported by substantial evidence even if two reasonable minds could draw opposite conclusions based on the same evidence.  *Palmetto All., Inc. v. S.C. Pub. Servs. Comm'n*, 282 S.C. 430, 432, 319 S.E.2d 695, 696 (1984).

Keeping faith with our standard of review, we still cannot square the Panel's decision with a rational reading of the record.  Dr. Merritt and Dr. Edwards both testified that, in their expert medical opinion, Russell's condition had worsened since the initial award.  No other doctor testified.  The Panel focused on the doctors' testimony that Russell's "before and after" MRI scans were comparable and suggested no change of her spinal condition.  The Appellate Panel emphasized the MRI scans several times, concluding the scans trumped Russell's "subjective complaints" that her condition had worsened.  We have no quibble with the Appellate Panel's conclusion that Russell's testimony alone was not enough to prove her case.  The Panel had the right to weigh her testimony and gauge her credibility, as it may with any evidence.  But the Panel's pitting of the MRI images against both Russell's "subjective complaints" and her doctors' considered opinions was not, under the circumstances here, a rational weighing of the evidence.

It is difficult to read the Appellate Panel's decision without wondering why it rejected the medical opinions of both of the doctors who examined and treated Russell.  In its order, the Appellate Panel contended the MRI scans were not "dispositive" of Russell's claim.  Yet, the only rational interpretation of the Appellate Panel's decision is that it rejected the doctors' opinions that Russell's condition had changed because the doctors also testified the MRI scans showed "no significant radiographical difference."  The stubborn fact is that there was nothing else about the doctors' opinions that the Appellate Panel criticized other than the MRI scans.

To say that the Appellate Panel's decision is supported by substantial evidence means a reasonable mind could conclude the opinions of two treating surgeons that Russell's spinal condition had changed are not probative because no MRI scan confirms the change or corroborates Russell's reports of pain.  But both doctors corroborated the reports of pain and placed the MRI scans in medical, clinical context.  Dr. Edwards—whose testimony the Appellate Panel deemed more weighty

than Dr. Merritt's—testified that, in his opinion "there is now a chronic change in that nerve that makes it more painful or more symptomatic." Dr. Edwards explained that even though the MRI showed no radiographical difference, "it's clear that the patient's symptoms are worse. . . . I don't have any doubts about that . . . clinically." He testified his examination of Russell after the initial award revealed she had developed numbness or discomfort connected to the L5 nerve root, something he had not noticed before. He further stated that "clinically her symptoms are more significant now than they were when I first saw her." When asked by Respondent's counsel if his diagnosis was "subjective," Dr. Edwards explained the MRIs revealed no objective difference and that Russell's muscles and reflexes had not deteriorated, "[b]ut that's true for most patients that have disc herniations . . . it's the symptoms of discomfort, predominantly, that can certainly worsen." Explaining the objective basis for his opinion, Dr. Edwards testified: "if you rely on the physical examination and the demonstration of these paresthesias [a numbness, tingling, or prickling sensation] that we're describing into this nerve distribution, that's part of an objective physical finding, though it does have a subjective component to it."

As we have noted, the Appellate Panel admitted there was "some" medical evidence in the record that could be "cherry-picked" to support either position on this change of condition dispute. This was a telling statement. By exalting the MRI over the uncontradicted medical opinions in the record, the Appellate Panel picked the MRI as the decisive cherry. In doing so, the Appellate Panel created a false equivalency between the medical opinions and the MRI; comparing the expert opinions to the MRIs is not cherries to cherries.

While the Appellate Panel need not accept medical testimony as conclusive, here it seems the Appellate Panel accepted the MRIs as conclusive. If the doctors' testimony was right, Russell proved her claim. If they were wrong, she did not. And the Appellate Panel was free to decide the doctors were wrong as long as its explanation of how the doctors were wrong was supported by substantial evidence. *Clark v. Philips Electronics/Shakespeare*, 433 S.C. 186, 192, 857 S.E.2d 378, 380 (Ct. App. 2021) ("The Panel must anchor its ruling on evidence substantial enough to provide a reasonable basis for its findings."); *see also Crane v. Raber's Discount Tire Rack*, 429 S.C. 636, 643, 646–48, 842 S.E.2d 349, 352, 354–55 (2020). This is not a case where the medical evidence conflicts and the Appellate Panel simply relied on one opinion over the other. Rather, here the Appellate Panel concluded a surgeon's opinion that a spinal condition can worsen in the absence of a corroborating MRI was medically unsound, without any evidence or reason in the record supporting this conclusion. Without such evidence, the Appellate Panel's decision to disregard the medical opinions was not a rational one, but one reached

by surmise and speculation. *Kennedy v. Williamsburg Cnty.*, 242 S.C. 477, 480, 131 S.E.2d 512, 513 (1963) (workers' compensation award "must not be based on surmise, conjecture or speculation"). And that makes it both clearly erroneous and arbitrary.

It is true that the Appellate Panel is the ultimate fact-finder and does not have to accept even uncontradicted evidence. In this sense, the factual decisions of the Appellate Panel may appear to be akin to those implicit in a jury's verdict, which appellate courts may not generally disturb as long as the verdict can be reconciled with any evidence reasonably supporting it. But the decisions of administrative agencies, such as the Appellate Panel, are different from jury verdicts in several important respects. One difference is that juries need not explain the reasoning behind their decisions, while the Appellate Panel must. *Brayboy v. Clark Heating Co.*, 306 S.C. 56, 58–59, 409 S.E.2d 767, 768–69 (1991). Another difference is that the Appellate Panel's decisions cannot stand if they cross the line drawn by § 1-23-380. Unlike a jury verdict, the Appellate Panel's factual decisions may be reversed if they are arbitrary or clearly wrong, which they are here.

We therefore reverse the decision of the court of appeals. Rather than add to the law's delay and prolong Russell's request for relief (we would call her procedural path an odyssey, but Odysseus' journey home took only ten years), we remand her case to the commission for an immediate order granting benefits.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

**KITTREDGE, C.J., FEW, JAMES and VERDIN, JJ., concur.**